Pace number 253490 Darbi Boddy versus Mary Grech et al. Argument not to exceed 15 minutes per side. Mr. Hartman, you may proceed for the appellant. May it please the court, Kurt Hartman on behalf of the appellant Darbi Boddy. I will reserve three minutes for rebuttal. Very well. In the New York Times case, the Supreme Court described the profound commitment of this country to the First Amendment and free speech, describing that debate should be uninhibited, robust, and wide open, and even sometimes unpleasantly sharp. In Terminello, the Supreme Court described speech can even go as far as being provocative and challenging. And thus, since the founding of the Republic, if not even before then, public officials have constantly confronted various accusations and charges and appellations against them. They're incompetent, they're frauds, they're tyrants. Yet in this case, to simply describe the performance of a public official and his public duties as being done in a cowardice manner was so egregious and so profound. Do you think that's an ad hominem attack, though? I don't think it is an ad hominem attack. And secondly, when you talk about ad hominem attack, I think you really got to look at this court's en banc decision in Bible's believer. It's not prohibiting ad hominem attacks. What it prohibits is fighting words. And so I think the district court and this court's panel in that footnote in Isom kind of went too narrowly or too broadly in terms of if it's an attack, if it's an ad hominem attack, that in and of itself can be prohibited. No, but it can be prohibited are fighting words. And so you've got to look at the jurisprudence on fighting words. And this court's decision in Bible's believers gets it right. You know, I mean, you look at the origins of fighting words of the Supreme Court's decision in Szczepanski's. That dealt with the statute that prohibited offensive, derisive or annoying words to any other person or any calling him by any offensive or derisive name. Those are ad hominem attacks. But the Supreme Court in Szczepanski's didn't base the decision on that. What the Supreme Court in Szczepanski established the fighting words doctrine was because of the limiting construction given to that statute by the state Supreme Court. Where in that Supreme Court in there. To the extent that that footnote suggests perhaps that ad hominem attacks are some other category of unprotected speech or something, you're saying that's incorrect. It has to be read. It has to be fight. It has to meet the fighting words. Absolutely. You have to have that additional element, if you will, that has a tendency to provoke or cause actions of violence, immediate actions of violence by the person to whom it's directed. You know, you look at it and how the Supreme Court over the years has characterized fighting words. You know, a clear and present danger of serious, substantial evil that rises above public inconvenience, annoyance or unrest. You know, inherently likely to provoke a violent reaction or in Texas versus Johnson, an invitation to fisticuffs. That has to be what it is. Mr. Hartman? Yes, Judge. You rely on the Bible's believers. I was on the Anbach case and I joined the majority opinion. I also wrote a concurring opinion. That was a public forum case. This is a limited public forum case. What's the distinction here and is the school board chairman given greater latitude because it is a limited public forum rather than a public forum itself? Judge Griffin, I don't believe that's a distinction without a difference. I don't think it makes a difference. Because in this case, we're dealing with, in this case, the district court essentially said, yeah, you get some protection, but that has to give way because it was this personal ad hominem attack that was characterized by the district court. But really, that is not an excluded category of speech. The excluded category of speech is fighting words. And so the district court did not put that additional element in there. And so if it's going to say you can exclude this in a limited public forum, what you're still getting at then is a viewpoint. Because if you look, and we kind of talk on page 30 to 32 of our brief, what was so egregious about what was said? And the testimony from the school board president was he was calling names or he was making accusations. That's viewpoint. And if you even look at the school board's brief in this case, five or six times throughout their brief, what do they characterize what we did? We dared to insult. They used the variations of insult five or six times in their brief saying that's what we did wrong. And I'm sorry, in this country, under the First Amendment, public officials have to be subject to criticisms, to insults, even unfounded insults. Because if we go ahead and allow vibrancy in terms of speech, in terms of accountability, in terms of criticizing our public officials, heaven forbid that we get to a point where the government can sit in judgment and say, well, you can't call us that. And in this case, actually, the school board president even said, you know what? If you want to say the superintendent's doing a wonderful job, he's a wonderful superintendent, that's allowed. They point out that after the chairman or whoever is running the meeting took the microphone away from your client, that she continued to talk anyway. And then when they reconvened, she did not request an opportunity to continue her remarks. And I guess the argument is she wasn't denied her five minutes because she didn't demand that they resume after the recess. How do you address that? I think the court should consider what is the public forum that is at issue. The public forum that is at issue is the public comment period for comments to be directed to the board, not to the general public in attendance. And so when in the middle of her comments, the board, not only does the president of the board march off the podium and grab the microphone, they recess the meeting in the middle of her comments. That's fine if they... If they allowed her to come back and finish her comments, would there be no violation? I don't think there would be. Because a public body, I think, can, in appropriate circumstances, recess in order to restore order. In this case, though, if you look and it gets into the heckler's veto, the president of this board did nothing to control the hecklers that were in the audience. Actually, somewhat encouraged them, threatening, I'm going to cut your mic, which riled the crowd up. I mean, the videos are in the record. They've been filed with the file clerk here in the Sixth Circuit so the court can look at them. Okay, Kate, is your position that the heckler's veto should be applied to a limited public forum, as we did in the public forum case in Bible Believers? I think absolutely, because in Bible Believers and the Owen Townsend educational case, another en banc decision, this court both times reiterated that a heckler's veto is an odious form of viewpoint discrimination. I tend to agree with you. What's your best authority that the heckler's veto should be applied in a limited public forum context? Well, I think you do the analysis of public forum. Is it protected speech? Yes. What type of forum? Limited public forum. Then the question be, does it meet constitutional standard? And the standard is you cannot engage in viewpoint discrimination in a limited public forum. Bible Believers and the Owen Townsend educational case both said heckler's veto is a viewpoint form of discrimination. Ergo, you cannot allow it in a limited public forum because viewpoint discrimination is prohibited in a limited public forum.  I guess my question is what's the best case or best authority you have that the heckler veto should be applied in a limited public forum? I don't have a case on point that really says it should be applied in a limited public forum. I think that's kind of a question of first impression for this court and this circuit. They cite to the white case out of the Ninth Circuit that it implies or suggests or questions whether it should be applied. But it's kind of illogical. If you're going to say a heckler's veto is viewpoint discrimination, then you're going to say, well, if it doesn't apply in a limited public forum, then we have some type of viewpoint discrimination allowed in a limited public forum, but some viewpoint discrimination is prohibited. No, the law is clear that viewpoint discrimination is prohibited in a limited public forum, period. And if that's the case and a heckler's veto is viewpoint discrimination, per Bible's Believers and Owen Tangey, it's prohibited. So I hope I answered your question, Judge. Yes, you did. Okay. And I also think in terms of the concept of this being viewpoint discrimination, should look at this court's decision in ISM, where it dealt with a prohibition out-of-school board meeting against abusive, antagonistic. Can I ask you a question, though? I'm curious. So I've looked at the videos, and it seems like some people in the crowd were against your client. Some people were in favor of your client. I think that's fair character. That's not viewpoint discrimination at that point, right, if the chair thinks the meeting is getting out of order and just kind of shuts down the meeting? I would agree. If she shuts down the meeting in order to restore orders and then picks back up where things terminate. But you're using her comments, I suppose, as taking sides, as the viewpoint discrimination, because she clearly didn't like the viewpoint of attacking the board, I take it? Well, if you look at that video, I think it's within the first 29 seconds of the comments. Ms. Bodie makes a critical comment about the cowardice superintendent and something about the weak school board or something like that. And immediately, as soon as she says that, the school board, I'm going to cut your mic. It doesn't say, wait a minute, Ms. Bodie, here's what you need to do. I'm going to cut, clearly in reaction to those comments, those specific criticisms that Ms. Bodie levied. And when she says that, if you listen to the video, the crowd, the antagonistic crowd starts getting riled up. And so, yes, there were people who supported both ways, but the board president, the government official has the responsibility to control the audience. And if you look at the testimony, the board president constantly was, she was being, Ms. Bodie was being disruptive because of how the crowd was reacting. She was going after Ms. Bodie and trying to control her and not control the crowd. And that's not allowed, you know, under the Hexer's Veto Doctrine. But I would say, back in the Isom case, when they talked about abusive, antagonistic, and personally directive things, this court said that when you prohibit that, that is viewpoint discrimination. So there should be Bianca Ville that, what happened here, because they called the superintendent a coward. And the testimony, page 30 to 32, they talk about name calling and making accusations against public officials. And the final thing I'd point, remember, Bible's Believer was actually two private parties engaging. Here, you're dealing with the government. You're going and criticizing the government. They came after her, suppressed her speech. We'd ask the court to reverse the decision of the district court and remand with either instructions to issue a preliminary injunction or for further proceedings consistent with that. What is the preliminary, what would be the preliminary injunction at this point? I think the preliminary injunction would allow, require or allow Ms. Bodie to come back to board meetings to make speeches and to allow her and enable her to make criticism. The testimony is she wanted to go in there. Is she barred from the meetings? She's not barred from the meeting. But because of the district court's decision, this gets to the reputable harm, she has to curtail her language. She has to self-censor what she cannot say. She said, I want to go in and call them tyrants. Well, she can't call them a coward. Heaven forbid, and again, that's kind of where do you draw the line? What's prohibited, what's not? She wants to call them tyrants. I don't think that under the district court's decision, the school board could prohibit her from saying that. So we clearly said what speech she wishes to engage in. I think it would be prohibited under the decision and analysis of the district court, which I believe clearly was an error.  Thank you. Thank you. You have your rebuttal. Morning, Your Honors. My name is Bernie Wharton. I represent the Appalese Mary Greck, the school board president, as well as the Xenia Community Local School District Board of Education. I'd like to thank my esteemed colleague, Mr. Hartman, for his argument. But I think where he has gone off the rails is he has not addressed the context of both the claims his client is making and the context of how the district court analyzed the procedural posture of the case. We were before the court on appellant's motion for a preliminary injunction. They have a heavy burden that they need to show to be able to obtain such an injunction. They were asking the court to enjoin my clients from enforcing their valid viewpoint-neutral policies on public participation in school board meetings. This court has repeatedly held that public bodies, particularly school boards, are allowed to have public participation policies that restrict the speech. Do you think they're challenging your regs, like, facially? I thought it seemed to me like they're challenging. So they're not crystal clear, but it seems like they're challenging, as applied to their client, these regs. You're correct. And on the face of the regs, it seemed like, I mean, they seem okay to me, I guess, but I watched the video. It's not clear to me that those regs were the things that were being applied at that meeting. I mean, I didn't see this woman being disruptive or any of that. If you view the whole video, and you'll see, there were approximately 22 people who signed up for public participation at this meeting. As the superintendent testified in the preliminary injunction hearing, there was the controversy of critical race theory that had been percolating throughout the community for some time. One of the board members was particularly inquisitive of the school officials about it, and the superintendent testified about the amount of time that he had to spend dealing with that particular board member and the request about critical race theory, whether it was present in any of the curriculum or programs of the school. So this particular meeting, where they were finally addressing this in a public manner, did attract a lot of attention. Twenty-two people was a much larger than normal public participation sign-ups. And there was, before the appellant spoke, another member, ironically also named Miss Body, but with an IE instead of a Y at the end, who was opposed to the appellant's position on critical race theory. And the presiding officer, Mary Greck, had to correct and warn Miss Body IE about how she was violating the public participation policy by directly addressing school board members. I guess I'm a little bit confused. What exactly did Mr. Hartman's client do that warranted cutting off the mic, grabbing it from the podium, recessing the meeting, and making it basically clear to her that her comments weren't welcome? What did she do? She did an ad hominem attack on the superintendent. And this court has held... I mean, this comment, like, I recently heard about the failing Xenia Board of Education and the cowardice superintendent who cannot perform adequately in his role. The use of the word cowardice is... That seems like a criticism of the way the guy's doing his job. You may or may not agree that he's standing up to the DEI people or not standing up to them. I mean, it just seems like it's a criticism. I don't... How does that warrant... And she's... I mean, her tone seems fine to me. She's calm. She makes other points. I mean, it's unclear to me. I don't understand what she... I mean, I've seen a lot of crazy public meetings. I'm sure you have, too, where people are out of control. Mr. Hartman himself, probably. And so this is not any of that. Right? But for the presiding officer to have the personal insult attack on the superintendent, she warned her about that properly under the public participation policy. And because of that attack, as well as the interruption to the regular order of the meeting that it caused, means the presiding officer was entitled to interrupt... Which part of the meeting regs or rules is that in violation of, too? I'm curious. The comments, they're not repetitive, obscene, that constitute a true threat. I mean... If you go to section L2 of the policy, Your Honor, it says the presiding officer may request any individual to stop speaking and or leave the meeting when that person does not observe reasonable decorum or is disruptive to the conduct and or orderly progress of the meeting. And I think the video clearly shows that that meeting was disrupted during the appellant's speech, not because of the viewpoint she was espousing, because we had other members of the public participation speak in favor of the appellant's position without disrupting the meeting. So it was the content of her speech that was the problem?  No, it was the manner of her speech. Well, that's what I'm asking.  I've watched that video several times. I'm curious. What was the manner? What was she doing? It wasn't... Personal attack on the superintendent with ad hominem insults. Now, I understand that you may not see that insult, but the district court did, and the district court under the onerous evidentiary standards that an appellant must face in obtaining a preliminary injunction ruled that the evidence was that the as-applied challenge of appellants was not going to be successful. On the merits to warrant a preliminary injunction. And that's the context that Mr. Hartman has not really addressed. He wants to address, go right into public forum analysis or political speech analysis, but he is constrained by the claims that he brought and the manner in which he brought them in a preliminary injunction. Let me ask you, is the reaction of the crowd any factor in all this to whether the chair could shut her down? If the reaction of the crowd disrupts the meeting, certainly. Doesn't the chair have an obligation to control the crowd as opposed to control the speaker in that situation? I think she has an obligation for both, and she has the ability to do both. Do anything to control the crowd? Yes, by going into recess to allow the crowd to settle down without the board members present. And when did they go into recess? Immediately upon asking the appellant to stop talking, taking the mic, and then they went into recess and they left the room. You'll see that on the video. I thought she took the mic away before they had gone into recess. Is that not correct? That is probably correct, Your Honor. Did they actually leave the room and then come back? Yes, they left the room for a period of time while they were still in session, and then they came back and went into recess. The meeting was in recess, then they left the room, then they came back in and came out of recess and restarted the meeting. You'll see both in the minutes and maybe make it out on the video that there was a motion seconded and voted upon to go into recess. Obviously, because of the disruption of the meeting, it may not be very audible. Returning to the elements for a preliminary injunction. Let's say she called this guy a coward. Maybe that's an insult. It's not fighting words, though. Do you agree with that? It wouldn't meet the fighting words standard under the First Amendment. Probably not, but the fighting words... Are we talking about a category of speech that should be exempted that's not fighting words? We're going to call it personal insults? I'm curious what authority we would have to do something like that. The courts in this circuit, including this circuit, have said that policies that prohibit derogatory, disparaging, and disrespectful language are valid for curtailing speech, especially in a limited public forum arena. Which case are you relying on for that? In my brief on pages 14 and 15, I cite the Timmon v. Wood out of the Sixth Circuit in 2007. It's 316F Appendix 364. Out of Michigan, the Galt v. City of Battle Creek, Western District of Michigan, 1999. It says that a citizen addressing a city governmental body in a limited public forum may be stopped from speaking if the speech is irrelevant or repetitious or disrupts, disturbs, or otherwise impedes the orderly conduct of the council meeting. My understanding from those cases, and maybe I'm wrong, is that they're really getting at people that are being disruptive. That their conduct is disruptive, not just the content of their speech. In other words, I mean, and I understand perhaps that's a close line when you're talking about personal insults, but is there a case where somebody is essentially calm, not being disruptive, but says something that somebody doesn't like, and that's viewed as disruptive to the meeting? I mean, these are public officials. They're going to be slings and arrows, right? I've had school board cases where, under the public participation policy, courts have held it proper to terminate a speaker based on not following the rules, such as addressing the audience rather than the school board. That was the Oswald v. Lakota schools that this court ruled on recently. I've had other school board cases at the district court or state court trial level where courts have upheld those policies based on the, not the viewpoint, but the manner of speaking of the plaintiffs in those cases. I think there's not any evidence that the viewpoint itself of the appellant on the CRT issue was any factor in the decisions by the school board president as evidenced by the fact that other members, both before the appellant and after the appellant of the public participation session, spoke in her favor of her position, and there was no restriction of their speech. So the viewpoint she was espousing wasn't the issue. It was the manner in which she was speaking, which in the limited public forum policy is entitled to regulate the time, manner, and place of that type of speech. In this case, the district court heard the evidence, heard the testimony from the superintendent, the school board president, the appellant herself, and had the video, and determined that the appellant could not meet the burden required to obtain the preliminary injunction that they were seeking. Talking also about the irreparable harm or the other components to a preliminary injunction motion, there's been no evidence that appellant is not welcome or would be prohibited from speaking at any future Xenia board meeting. As long as she follows the public participation policy, she can show up and talk. There is no restriction on her from attending future meetings. And just in summary, I would point out to the... What's your position if she called the superintendent a tyrant? Would that be considered a violation that she could be shut down again? I'm not going to rely on the old attorney's trick of, it depends, your honor, but I would say the use of the word tyrant would probably, given the historical context of that term, I don't know that that would be prohibited under the public participation. Patrick Henry used it. It's been used since then as well, your honor. The coward is definitely out. Yes, I think that is a personal attack. Is there a list somewhere that you could give her? No, your honor, that would make it a lot easier, wouldn't it? But no, there is no list. It would be, I know it when I see it. Thank you, your honor. Thank you. Is there rebuttal? Thank you, your honor. Your honor, just a few point of clarification from the court's questions. Yes, this does deal with an as-applied challenge. We're not looking for a universal injunction or anything along those lines. So it was dealing basically with Ms. Bode and her ability to speak or being stifled. They'll talk about, well, this was simply reasonable decorum or disruptive to the meeting. I think Judge Bode, she got it right. Was it her speech or was it the speaker or the audience that you have to control the disruption? In this case, in terms of how she was speaking, the district court actually at page 15 of its decision, it's 411 of the record, actually acknowledges that the video of the plaintiff's remarks when viewed in her favor may show she did not engage in overt behavior consistent with a lack of reasonable decorum. She talked without yelling and appears to use a manner and tone appropriate to the circumstances. Even the district court recognized that in the video. And I think that's a factual finding that we're deferential to. He talks about this deals with a manner of speech. Manner of speech deals with how you speak, not what you say. It deals with amplification, using signs, using tents in a national park to engage in speech. That's manner of speech. Here they're dealing with what she said, and that is not a manner of regulation. What about the treatment of the comparators that he cites? You mean the other people? Other people at the meeting. I think, well, firstly, First Amendment rights are not a collective right. They're an individual right. And part of that individual right is each individual has the right to determine how he or she is going to say what language they wish to use. They don't piggyback on somebody else. Second thing is this wasn't simply just about the CRT or DEI issue. Here it was criticism of the superintendent. That's what she was stifled for, apparently. And when the Board President says, if you want to call him wonderful superintendent, you're allowed to, and there's no problem with that. How dare you call him a cowardice? So I think that does definitely get to the viewpoint. And even the testimony, again, page 32 of our brief, we lay out what she says. It was name-calling. It was making accusations. I do find it funny, okay, if the word tyrant is okay, but the word cowardice is out, where is that line? And it's a slippery slope. And if we're going to have speech that is robust, invigorating, even confrontational at times, that is the First Amendment. The final thing, I think, in terms of regulation, one thing this court, he cites the cases from 2009, and two things. You've got to look at this court's decision, again, in ISOM, where they talk about the Supreme Court's case in Mattel and IKONU, which I think really kind of changed the landscape in terms of what is viewpoint, and, you know, these personal comments. Personally, the abuse of language in ISOM, they said that is viewpoint, and that dictates that this clearly was viewpoint. Final thing, this court in Maddox basically said, Maddox v. City Park, public officials need to have thicker skin than the ordinary citizen when it comes to attacks on their views. In this case, the district court gave protection to an eggshell public official. That's not the law. Thank you, everyone. Thank you. Thank you to both counsel. We will take the case under submission.